**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

KENZI NORIS ELIZABETH SNIDER,

        Plaintiff,

v.                                 CIVIL  ACTION  NO.  3:07-0335

Federal Bureau of Investigation Agents
MARC DIVITTIS, and SEUNG LEE; and
United States Army Criminal Investigation
Division Agent MARK MANSFIELD,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before this Court is Defendant Seung Lee's Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Doc. No. 19).  Based upon the motion, the additional filings, and oral argument and for the reasons below, the Court **GRANTS in part** and **DENIES in part** the motion.

**FACTS**

In 2001, Jamie Penich, an American college student, was murdered while studying abroad in South Korea.  Plaintiff, Kenzi Noris Elizabeth Snider, knew Penich while they were living in South Korea.  When she returned to the United States, Plaintiff was questioned and eventually confessed to murdering Penich.  Plaintiff was extradited to South Korea where she was tried and acquitted – in the trial court on June 19, 2003, by the three-judge appeals court on October 14, 2003, and by the Korean Supreme Court on January 13, 2006.

On May 24, 2007, Plaintiff brought suit against Federal Bureau of Investigation Agent Marc Devittis ("Devittis"), United States Criminal Investigation Agent Mark F. Mansfield ("Mansfield"), Federal Bureau of Investigation Agent Seung Lee ("Lee"), and the Federal Bureau of Investigation ("FBI").  She alleged seven causes of action: 1) Fifth Amendment: coerced confession; 2) Fifth Amendment: deprivation of right to fair trial, wrongful extradition, and wrongful imprisonment; 3) Fifth Amendment: failure to intervene; 4) Fourth Amendment: false imprisonment; 5) Sixth Amendment: denial of right to counsel; 6) State Law Claim: fraudulent prosecution; 7) State Law Claim: outrage/intentional infliction of emotional distress.

The United States filed a Motion to Dismiss and Substitute, which this Court granted on February 6, 2008.  As a result, the FBI was dismissed from the suit and the sixth and seventh causes of action were dismissed; the first five causes of action against the individual officers remain.[1]

On October 4, 2007, Agent Lee filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.  Thereafter, the Court invited both parties to submit additional briefs and present oral argument on the applicability of the United States Supreme Court decision of *Wallace v. Kato*, 127 S.Ct. 1091 (2007).

## DISCUSSION

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957), previously used to evaluate complaints subject to 12(b)(6) motions. *Twombly*, 127 S. Ct. at 1969.  In its place, courts must now look for "plausibility" in the complaint.  This standard requires

_____

[1]As Agents Divittis and Mansfeld have not yet been served in this action, the Court will address the suit only in reference to Agent Lee.

a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (internal quotation marks and citations omitted).  Accepting the factual allegations in the complaint as true, the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 1965 (citations omitted).  If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 1966 (internal quotation marks and citations omitted).  Two weeks after issuing its decision in *Twombly*, the Court emphasized in *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" 127 S. Ct. at 2200 (quoting *Twombly*, 127 S. Ct. at 1964 (other citations and some internal quotations omitted).  Thus, "a universal standard of heightened fact pleading" is not required, rather it is "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143,157-58 (2d Cir. 2007) (italics original).  It is under this revised standard that the Court will evaluate each of Defendant Lee's arguments.

### Plaintiff's Untimely Response

The Court notes that Plaintiff did not respond in a timely fashion and did not seek leave of Court to file beyond the deadline.  However, in the interest of justice the Court will consider Plaintiff's response in analyzing the motion.

**Collateral Estoppel**

Defendant Lee argues that Plaintiff is collaterally estopped from re-litigating the coerced confession issue because it was addressed and adjudged in the extradition proceeding. By that argument, since Counts I-V are based upon the coerced confession, the claims should be dismissed because the parties are in privity, the claims are substantially the same, and there was a final judgment on the merits.

"For collateral estoppel to apply, the proponent must establish that (1) the issue sought to be precluded is identical to the one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom preclusion is asserted must have had a full and fair opportunity to litigate the issue in the previous forum." *Eddy v. Waffle House, Inc.,* 482 F.3d 674, 679 (4th Cir. 2007) *citing Sedlack v. Braswell Services Group, Inc.,* 134 F.3d 219, 224 (4th Cir. 1998). The United States Supreme Court explained the purpose of the doctrine: "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of re-litigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc., v. Shore*, 439 U.S. 322, 326 (1979).

In the Memorandum and Order based upon the extradition hearing, the Magistrate Court made clear that "the responsibility of the court in the extradition process. . . differs significantly from the adjudicative process normally encountered." Mem. & Order, p. 3. The Court explained, "far from the usual 'final judgment' resolving matters in difference between the parties, in extradition proceedings the court, if it finds that treaty and statutory requirements are met, certifies this finding,

-4-

together with the record in the case, to the Secretary of State." *Id.* (citations omitted).  After receiving this certification, the "decision on whether to surrender the fugitive, 'rests in the discretion of the Secretary of State.'" *Id.* (citations omitted).

The Magistrate Court found that Plaintiff's confessions were not coerced for the purpose of establishing probable cause sufficient to permit extradition to Korea.  However, the Court's opinion is clear –  the findings in an extradition proceedings are not a "final judgment."  The Court's role in an extradition hearing is that of "executive" and not a "judicial function." Mem. & Order, p. 2-3. Therefore, the Court's finding could not be considered a "final judgment on the merits" for the purposes of collateral estoppel.

Additionally, the extradition hearing did not subscribe to the Federal Rules of Evidence or the Federal Rules of Criminal Procedure, so the proceedings did not give the plaintiff a "full and fair opportunity" to litigate the issue.  Mem. & Order, p. 5.  In fact, "evidence of alibi, evidence relating to credibility, evidence contradicting a requesting party's proof and evidence in defense, such as insanity, have been excluded in extradition proceedings." *Id.* at p. 3 (citations omitted).  As stated in the Southern District of New York case cited by Defendant Lee, "an accused has no confirmed right at an extradition proceeding to present evidence that contradicts the requesting party's case. 'Evidence of. . . facts contradicting the demanding country's proof or of a defense. . . may properly be excluded from the Magistrate's hearing.'" *Gill v. Imundi*, 747 F.Supp. 1028, 1040 (S.D.N.Y. 1990) *quoting Shapiro v. Ferrandina,* 478 F.2d 894, 901 (2d Cir. 1973) *cert. dismissed,* 414 U.S. 884 (1973).  In other words, the defendant in the extradition hearing, or Plaintiff here, is not given a "full and fair opportunity" to litigate.

Finally, dismissing this case would not serve the purposes of collateral estoppel and prevent "needless litigation."   Clearly the rules and procedures followed, the role of the court, as well as the purposes of the extradition proceeding, were sufficiently different such that the parties should be entitled to litigate the issues fully.  While this Court recognizes the importance for judicial economy, notions of fairness require that the plaintiff not be collaterally estopped from litigating her claims.

### Viable *Bivens* Action & Failure to State a Claim

Defendant Lee next argues that Plaintiff has not established a viable *Bivens* action against him.  Defendant contends that the claims were litigated in the extradition hearing or that Plaintiff did not establish facts sufficient to constitute a claim. As established above, this Court is unwilling to determine that the prior extradition hearing provided a fair forum such that Plaintiff's claims should be dismissed at this stage. The requirements of the Supreme Court in *Twombly* require only that the Plaintiff establish a "plausible" claim to avoid a motion to dismiss.  The Court must ensure that there are facts sufficient to put the opposing part on notice of the claim and the grounds upon which the claim rests.  *Twombly*, 127 S. Ct. at 1964.  The complaint must comprise "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.  The Court will look at each claim.

In Count I, a claim under the Fifth Amendment alleging her confession was coerced, Plaintiff states that the "Defendant Agents, pursuant to the training and policy of the Federal Bureau of Investigation. . . fabricated a story" of Plaintiff's guilt and "coerced her into distrusting her actual memory and adopting their fabrication as truth."  Complaint, p. 15.  Plaintiff details that there were "psychological methods" used to coerce her and that the confession ultimately was used against her. Although Defendant Lee is correct that the Court must consider all the surrounding circumstances when considering whether a confession is coerced, those detailed considerations are not necessary

-6-

when considering a motion to dismiss. *United States v. Braxton,* 112 F.3d 777, 781, 785 (4th Cir. 1997) (stating that courts should consider the "totality of the circumstances" when determining if a confession was coerced).

Count II alleges deprivation of a right to fair trial, wrongful extradition, and wrongful imprisonment. Plaintiff's describes in the Complaint that Defendant Lee assisted the agents in the wrongful confession which led to the extradition, charges, prosecution, and imprisonment.

The third count of the Complaint alleges a failure to intervene based upon the Fifth Amendment. Plaintiff explains that the officers did not prevent the misconduct, coercion, and emotional distress during the interrogation. These alleged facts occurred during Defendant Lee's participation and involvement in the interrogation and are sufficient to form a plausible claim against Defendant Lee.

Count IV alleges that Defendant Lee assisted the officers in the actions that led to the false imprisonment. There are, therefore, facts sufficient to establish a plausible claim against Defendant Lee for false imprisonment.

In Count V, Plaintiff alleges denial of the right to counsel. Based on the facts alleged, Plaintiff establishes a plausible claim that she was in custody and should have been offered the right to counsel during Defendant Lee's interrogation of her.

The Complaint provides sufficient detail for each of these five Counts against Defendant Lee to be plausible and put Defendant Lee on notice so he can establish a defense. The Court will not dismiss the Counts for failure to state a claim.[2]

---

[2]The Court notes that, despite Defendant Lee's contention that Plaintiff cannot seek relief on these claims because they occurred in Korea, the facts that are the basis for the claims took place

(continued...)

**Qualified Immunity**

In order to determine whether an officer has qualified immunity, "courts are required to resolve a 'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.'"  *Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007) *quoting Saucier v. Katz,* 533 U.S. 194, 201 (2002).  Only if the court "finds a violation of a constitutional right" does the Court proceed to the next step, "whether the right was clearly established. . . in light of the specific context of the case." *Id. quoting Saucier,* 522 U.S. at 201.  The purpose of qualified immunity is "to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment."  *Saucier*, 522 U.S. at 195.

"The first step in assessing the constitutionality" of the officer's actions "is to determine the relevant facts."  *Scott*, 127 S.Ct. at 1774.  When there have not yet been factual findings, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [. . .] motion.'"  *Id. quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) (per curiam); *Saucier*, 533 U.S. at 201.  "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts."  *Scott*, 127 S.Ct. at 1775.

Defendant Lee contends that there was no constitutional violation because the Magistrate in the extradition hearing adjudged that the confession was not coerced.  However, as this Court determined above, that decision was not a "final judgment."  Taking Plaintiff's version of the facts

---

[2](...continued)
in the United States.  Additionally, as the Court understands her claims, Plaintiff is not challenging the legal processes of the Korean court system; she challenges Defendant Lee's failure to adhere to the constitutional protections she should have been afforded in the United States.

as true for this inquiry, there were psychological influences from the officers that resulted in her coerced confession; Plaintiff was entitled, but not permitted, to consult with an attorney; and the officers failed to intervene to protect her.  These facts, if true, establish that Defendant Lee violated at least one constitutional right.

Because there was a violation of a constitutional right, the Court must proceed to the second inquiry to determine whether qualified immunity is appropriate – namely, whether the right was clearly established.  "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted."  *Saucier,* 533 U.S. at 194-95. The situation that Defendant Lee confronted was one in which he was questioning Plaintiff in a hotel room about her potential involvement in a murder that occurred in Korea.  Although the specific facts as to the circumstances are in dispute – for example, whether the questioning was custodial or not and whether she was entitled to the presence of counsel or not – the rights involved were clearly established.  It is clearly established that officers are not entitled to coerce a confession, that individuals in custodial interrogations are entitled to counsel, and that officers have a duty to intervene to protect certain individuals in circumstances where they may be harmed by another officer.  *See e.g. Dickerson v. United* States, 530 U.S. 428, 434 (2000) (stating that involuntary confessions must be excluded from court proceedings and re-stating that the purpose of *Miranda* warnings is to protect against coerced confessions); *Miranda v. Arizona,* 384 U.S. 436, 479 (1966) (holding that in a custodial interrogation, the person must be told of his right to, *inter alia,* counsel); *Winfield v. Bass*, 106 F.3d 525, 531 (4th Cir. 1997) (stating that it was clearly established that prison officials had a duty to protect prisoners).

Because there was at least one constitutional violation and the rights were clearly established, Defendant Lee should have known and adhered to those rights. Therefore, he is not entitled to qualified immunity.

**Constitutional Claims As Time Barred**

The parties agree that the applicable statute of limitations for Plaintiff's *Bivens* claims is two years based on West Virginia's personal injury statute of limitations. *Bell ex re. Bell v. Board of Educ. Of County of Fayette*, 290 F.Supp.2d 701, 709 (S.D.W.Va. 2003); Pl. Response to Def. Seung Lee's Mot. To Dismiss, or in the Alternative, Mot. For Summ. J., p. 3. Because the statute of limitations is two years, the issue is when the cause of action accrued.

Defendant Lee argues that the causes of action accrued either on October 11, 2002, the date of the Magistrate Court's Memorandum and Order, or on December 17, 2002, when Plaintiff's time period for filing *habeas corpus* relief expired and the United States Secretary of State ordered her released to the Korean authorities. Plaintiff responds that the claim accrued on January 13, 2006, the date on which Plaintiff was acquitted by the Korean Supreme Court.

Plaintiff relies heavily on the United States Supreme Court's holding in *Heck v. Humphrey*. 512 U.S. 477 (1994). There, the Court cautioned against proceeding in a civil case that, if successful, might undermine the validity of a criminal judgment against the plaintiff. *Heck v. Humphrey*, 512 U.S. at 487. "But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.*

The United States Supreme Court recently clarified its holding in *Heck*. *See Wallace v. Kato,* 127 S.Ct. 1091 (2007). In *Wallace v. Kato* the petitioner brought a § 1983 claim for false arrest after

-10-

his conviction was set aside.  *Id.*  The Court held that he brought the claim too late – since his claim was for a false arrest, the statute of limitations for the § 1983 claim began on the date "legal process was initiated against him," not the date that his conviction was set aside.  *Id.* at 1096, 1097-98.  The Court then explained how this related to *Heck*.  "The *Heck* rule for deferred accrual is called into play only when there exists. . . an 'outstanding criminal judgment.'  It delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn."  *Id.* at 1097-98 (citations omitted).  The Court stated that the *Heck* principle would be applied "to the date on which the statute of limitations began to run, that is, the date petitioner became held pursuant to legal process."  *Id.* at 1098.  When Wallace was held pursuant to legal process, there was still no criminal conviction that the tort cause of action would impugn.  *Id.*  The Court admonished that if "a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."  *Id.* at 1098.  Therefore, "[i]f the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise the civil action will proceed, absent some other bar to suit."  *Id.*

In terms of when the suit is appropriate, the Court stated: "Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.  The cause of action accrues even though the full extent of the injury is not then known or predictable."  *Wallace*, 127 S.Ct. at 1097 (citations omitted).  The Fourth Circuit similarly stated that for a civil rights action, "the time of accrual is when plaintiff

-11-

knows or has reason to know of the injury which is the basis of the action." *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1162 (4ᵗʰ Cir. 1991) *quoting Cox v. Stanton,* 529 F.2d 47, 50 (4ᵗʰ Cir. 1975).

Therefore, based on *Wallace*, the plaintiff must file suit as soon as the act results in damages, even if the cause of action could impugn the pending criminal proceedings; it is up to the district courts to stay those actions. Both parties argued how *Wallace* applies or does not apply to each of the remaining causes of action based upon the two year statute of limitations. The Court will address the *Wallace* arguments as to each claim.[3]

Coerced Confession

The coerced confession claim requires that the Court look to the "totality of the circumstances" in determining whether the individual was unduly influenced and whether the confession was voluntary. Plaintiff argues that if Plaintiff brought and won the claim for coerced confession, it would have necessarily impugned the validity of the extradition order and criminal prosecution against her. This distinguishes her position from that of the petitioner in *Wallace* – had a Court found that he was falsely arrested, it would not have impugned the prosecution that followed.

As discussed above, even if the claim for coerced confession would have impugned the pending criminal proceeding, it was the district court's responsibility to stay the proceedings until the subsequent conviction or acquittal. The issue is only when the coerced confession resulted in damages such that Plaintiff's cause of action accrued.

---

[3]Plaintiff argues that *Wallace* is not retroactive and does not apply to Plaintiff's case. The Supreme Court did not create new law; rather it explicitly stated what the law is. There is no issue of retroactivity. *Wallace* certainly applies to Plaintiff's case.

-12-

Arguably, there are several different points in time when Plaintiff was harmed by the coerced confession such that the cause of action would have accrued. Plaintiff's coerced confession led to the warrant, the extradition, and the prosecution. The interrogation during which the coerced confession occurred took place on February 4, 5, and 6, 2002. Plaintiff was arrested on February 28, 2002. Magistrate Judge Taylor approved her extradition on October 9, 2002. Plaintiff was acquitted in trial court on June 19, 2003 and in appeals court on October 14, 2002. She was finally acquitted by the Korean Supreme Court on January 13, 2006. In order for her to meet the statute of limitations, the date that Plaintiff filed suit, May 24, 2007, must have been within two years of the "wrongful act or omission [that] result[ed] in damages." *Wallace*, 127 S.Ct. at 1097 (citations omitted). As stated above, "the cause of action accrues even though the full extent of the injury is not then known or predictable." *Id.* The first point at which the coerced confession resulted in damages could have been the warrant, the extradition, or the prosecution. Using any of those dates, however, Plaintiff filed her claim beyond the statute of limitations. She should have filed suit at the first moment she was harmed by the wrongful act, even if the extent of the harm was not determinable at the time. The district court would have stayed the proceedings and the claims would have proceeded after her acquittal. For these reasons, the claim for coerced confession is **DISMISSED.**

<u>Deprivation of Right to Fair Trial, Wrongful Extradition, Wrongful Imprisonment</u>

As Plaintiff mentioned in her Supplemental Brief and during oral arguments, this Count most resembles a claim for malicious prosecution and the Court will therefore treat the cause of action

-13-

as such.[4]  The Supreme Court noted in *Wallace* that a claim for malicious prosecution cannot accrue until "favorable termination of a criminal proceeding" because that is an element of the claim. *Wallace*, 127 S.Ct. at 1097.  Here, Defendant Lee argues that the date of the first acquittal should apply because that was when the proceeding ended favorably to Plaintiff.  However, because the system in Korea allows for the prosecution to appeal an acquittal, the proceeding did not truly end in her favor until January 13, 2006 when the Korean Supreme Court acquitted her.  Based on this date and the two year statute of limitations, Count II, which is effectively a claim for malicious prosecution, is not untimely.  She was required to have a favorable termination prior to filing the suit.  The motion to dismiss the cause of action is **DENIED.**

Failure to Intervene

Plaintiff argues that in order to prevail on a claim for failure to intervene, she would need to show that the defendants knew of the lack of incriminating evidence against her and of the coercive nature of the interrogations.  She notes that if a court were to recognize those facts, it would necessarily impugn the proceedings against her.  However, as this Court made clear above, that the cause of action would impugn the criminal proceedings is not determinative.  Once filed, the district court can stay the proceeding if it would necessarily impugn the pending criminal suit.

The issue is when Plaintiff was harmed such that the cause of action accrued.  As with the claim for coerced confession, there are several dates based on which Plaintiff could argue she was harmed because of the officers' failure to intervene.  She could argue that the wrongful act of failing

---

[4]A cause of action for malicious prosecution "must include (1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant's malice."  *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000).

to intervene harmed her when she was coerced into confessing, when she was arrested, when she was extradited, or when she was prosecuted in Korea.  Again, as was true with the coerced confession claim, the initial harm took place long before the final date of acquittal and well before the two years prior to filing this claim.   That she could not and did not know the full extent of damages does not delay accrual.  The motion to dismiss the cause of action for failure to intervene is therefore **GRANTED** and the cause of action is **DISMISSED.**

False Imprisonment

Plaintiff acknowledges that if she brought a successful claim for false imprisonment, it would not necessarily impugn the criminal proceedings against her.  For this reason, she urges that court to utilize an equitable tolling.  The Supreme Court chided the suggestion of equitable tolling in *Wallace*: "We know of no support (nor does the dissent suggest any) for the far-reaching proposition that equitable tolling is appropriate to avoid the risk of concurrent litigation. ... Equitable tolling is a rare remedy to be applied in unusual circumstances. . . ." *Wallace*, 127 S.Ct. at 1099-1100. Plaintiff is not entitled to equitable tolling here because her claim for false imprisonment, like a claim for false arrest, ended when she was subjected to legal process.  On February 28, 2002, she was arrested pursuant to a lawful warrant.  At that time, she had two years to file a claim for false imprisonment. As those two years have passed, the cause of action for false imprisonment is **DISMISSED**.

Denial of the Right to Counsel

Plaintiff argues that to succeed on a claim of denial of the right to counsel, she would have to show that Defendants deprived her of her right to counsel during an interrogation.  She argues that

-15-

this would have rendered the statement invalid and therefore the criminal proceedings based upon the statement invalid.

Like the claim for false arrest, Plaintiff would have been able to bring the claim as soon as she was subject to legal process.  In other words, once Plaintiff was arrested with a valid warrant and then permitted to obtain counsel, her claim would have accrued.  At that point, she had been initially harmed because she was coerced to confess without counsel.  Therefore, as the valid arrest was on February 28, 2002, the statute of limitations has run and the cause of action for denial of right to counsel is **DISMISSED.**

### Summary Judgment

Defendant Lee argues that in the alternative to dismissing the action, the action should be subject to summary judgment. Plaintiff's remaining claim is Count II, claims for Deprivation of Right to Fair Trial, Wrongful Extradition, and Wrongful Imprisonment – effectively a claim for malicious prosecution.  As the Court stated above in footnote 3, a malicious prosecution claim requires "(1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant's malice." *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000). Defendant cites the extradition transcript as the basis for this contention, stating that Plaintiff's testimony suffices to show she cannot meet the required standard for summary judgment.

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

-16-

Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

It is clear that Defendant Lee played a role in the initiation of the criminal proceedings against Plaintiff and that there was termination favorable to the plaintiff.  Therefore, there must be a scintilla of proof that there was a lack of probable cause to support the proceeding and that the defendant acted with malice.  In reviewing the transcript to which Defendant Lee cites, it is clear that Plaintiff has presented more than a scintilla of evidence of her claims.  Her testimony reflects that her confession was the product of suggestion by the officers and that her statement to them was in response to the officers' contentions that her recollection was incorrect.  Taking the facts in the light most favorable to the non-moving party, Plaintiff establishes a basis for her claims beyond a scintilla.  That there is such evidence precludes summary judgment.

## CONCLUSION

For the reasons above, the Court **GRANTS in part** and **DENIES in part** Defendant Seung Lee's Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Doc. No. 19).

-17-

Specifically, the Court **GRANTS** the motion with respect to Count I (Coerced Confession), Count III (Failure to Intervene), Count IV (False Imprisonment), and Count V (Denial of Right to Counsel).  Counts I, III, IV, and V are **DISMISSED**.  The Court **DENIES** the Motion to Dismiss with respect to Count II (Deprivation of Right to Fair Trial, Wrongful Extradition, Wrongful Imprisonment). The Court also **DENIES** the alternative Motion for Summary Judgment.

The Court **DIRECTS** the Clerk to send a copy of this written Order and Opinion to counsel of record and any unrepresented parties.

ENTER:          March 10, 2008

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE